INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY
v. CHARLOTTE H. DE BAJLIGETHY.

No. 620.

1. **Railway Company—Negligence—Moving Cars Within City Limits.**—
The moving of a car, detached from the engine by railway company, without the customary signals, within the limits of a city and at a speed greater than the ordinances of the city permit, constitutes negligence on the part of the company such as will render it liable for injury proximately resulting therefrom.

2. **Same—Presumption as to Contributory Negligence.**—In an action for damages against a railway company for causing the death of a person, negligence on the part of the deceased is not to be presumed, but, if consistent with the circumstances shown in evidence, the presumption is rather that he acted prudently.

3. **Damages for Injuries Resulting in Death—Adult Children—Practice on Appeal.**—In an action of damages for injuries causing the death of a parent, his adult children are not entitled to any part of the recovery in the absence of proof of actual damage to them; and where the judgment below is for damages to be divided pro rata between minor children, and adult children not entitled to recover, the appellate court will not award the entire damages to the minors, but only their pro rata part.

APPEAL from Harris.   Tried below before Hon. S. H. BRASHEAR.

*John M. Duncan* and *Robert G. Street*, for appellant.—1. The plaintiffs, Bonaparte N. C. De Bajligethy, C. N. A. De Bajligethy, and Aurelia Smith and her husband, did not have any pecuniary interest in the life of the deceased, and judgment in their favor is manifest error.

2. It has been held error to tell the jury to find for the defendant if the plaintiff, on approaching a railway crossing, did not look for approaching trains, and if the injury would not have otherwise occurred, and reversible error if the evidence would have supported a different verdict.   Railway v. Chapman, 57 Texas, 82; Railway v. Lee, 70 Texas, 501; Railway v. Anderson, 76 Texas, 251; Railway v. Dyer, 76 Texas, 161; Railway v. Porfert, 72 Texas, 349; Railway v. Wilson, 60 Texas, 143.

3. The principle upon which the rule prescribed in these cases rests is, that in the absence of the violation of any statutory duty it would be infringing upon the province of the jury and charging on the weight of evidence for the court to instruct the jury what particular fact or state of facts would constitute negligence.   Railway v. Dean, 76 Texas, 73; Railway v. York, 74 Texas, 366; Railway v. Garcia, 75 Texas, 583; Railway v. Chambers, 73 Texas, 296; Railway v. McKenna, 82 Texas, 204; Railway v. Fuller, 24 S. W. Rep., 1090.

*Ewing & Ring*, for appellees.—1. As to care in crossing a railroad track, and as to the province of court and jury in such cases, see Railway v. Murphy, 46 Texas, 356, 363, 365; Railway v. Chapman, 57 Texas, 84; Railway v. Lee, 70 Texas, 501; Railway v. Anderson, 76

Texas, 251; Railway v. Dyer, 76 Texas, 161; Railway v. Porfert, 72 Texas, 349; Railway v. Wilson, 60 Texas, 143.

2. As to presumption of prudence to avoid danger, see 19 American and English Encyclopædia of Law, 64. Presumption applied that one looked and listened before crossing a railroad track. Railway v. Weber, 76 Pa. St., 157; Whitford v. Southbridge, 119 Mass., 564.

3. It is not negligence not to anticipate violation of legal duty by another. Railway v. Gray, 65 Texas, 36. Negligence which does not contribute is no defense. Railway v. Boudrou, 92 Pa. St., 475. Due care exists when proportioned to anticipated danger. Lagan v. Railway, 72 Mo., 392.

4. If the total recovery was not excessive, it does not lie in the mouth of the appellant to complain of the division. So far as concerns Aurelia Smith, the assignment has no plausible basis, she being a deserted wife, and a dependent member of the family of the deceased. As concerns the two sons, they were deprived of pecuniary benefit by the death of their father, and especially so in view of the obligation now resting upon them to support the dependent members of the family. The court could lawfully assume, the assessment being based upon probability, that the adult sons would discharge their moral duty. Rev. Stats., art. 2909; Railway v. Kutac, 72 Texas, 653; Railway v. Barron, 5 Wall., 90; 2 Thomp. on Neg., 1291; McIntyre v. Railway, 37 N. Y., 287.

WILLIAMS, Associate Justice.—Maximus De Bajligethy was struck and killed by a moving car upon defendant's track in the city of Houston, on the 7th day of February, 1893.

This action was brought by appellees, his widow and children, to recover damages sustained by them from his death, upon the allegation that such death was caused by the negligence of appellant.

The case was tried by the court without a jury, and judgment was rendered in favor of the plaintiffs for $4000, one-third of which was adjudged to the widow, and the remainder was divided equally between the sons and daughters, of whom there were nine. One of the daughters was married, and three of the sons were adults, and none of these were shown to have been dependent upon their father for support; nor is there any evidence that they had any expectation of receiving from him had he lived any pecuniary benefit. A brother of Mrs. Smith, the married daughter, testified, that he did not know where her husband was, and had not heard of him for three, four, or five years; and this was all of the evidence tending to show her dependency on her father.

The circumstances attending the death of De Bajligethy were briefly as follows: Early in the morning he left his home, which was east of defendant's depot, intending to go to market in the city. He stopped at the depot and remained in waiting room, awaiting the arrival of a street car to carry him to the market, which was about a mile and a

half west of the station. One of the defendant's tracks ran just west of and parallel with the station house, in which the deceased was, and between the two was a sidewalk eighteen feet wide. West of and parallel with this track was the track of the street railway, and the strips of land on each side of defendant's railway were habitually used by the public as sidewalks; and the public habitually, at all times, with the knowledge and acquiescence of defendant, passed back and forth across the track where deceased was struck. At the time of the morning when deceased was killed it could have been reasonably foreseen that persons would be crossing the track at that place.

The defendant, in making up one of its passenger trains, pushed the car, which struck deceased, along the track in question at a rate of speed exceeding six miles an hour, to which rate the movement of trains within the city was limited by ordinance. The car was not attached to or controlled by an engine, and no bell was ringing or whistle blowing to give warning of its approach. It had been put in motion by being "kicked" backward by the engine, and, being then detached from the engine, it was left to move to its place on the track. A brakeman, however, rode upon the forward platform, and a lighted lantern was either held in his hand or was placed upon the floor by his side.

The deceased, in attempting to cross the track on the occasion in question, came out of the station house (from which the car could not be seen) at a short distance from the track, moving rapidly. It was dark, the wind was blowing briskly from the north, and in the direction from him toward the car. The approaching car made little noise, and the electric cars were frequently passing on the street a few feet off. The deceased received no warning except a "hallo" from the brakeman, which was about simultaneous with his being struck, and too late for him to avoid the injury; it does not appear that he did not look for the car. It had for some time before the accident been the custom of defendant to make up its trains, as was done in this instance, by "kicking" the car into place. It does not appear sufficiently that deceased knew of this practice, or knew that this train was being made up this way.

1. From these circumstances, our conclusions are, that the moving of the car, detached from the engine, without the customary signals, and at a speed greater than the ordinances of the city permitted, were acts of which persons or ordinary prudence would not have been guilty, and constituted negligence on the part of defendant; and that such negligence proximately caused the death of the deceased.

2. Under the peculiar circumstances of the situation, we can not say that the conclusion of the trial judge, that deceased was not guilty of negligence, was not warranted by the evidence. Negligence on his part is not to be presumed, but, if consistent with the circumstances shown, the presumption is rather to be indulged that he acted prudently. It does not affirmatively appear that he did not look up and

down the track before going upon it. The only direct statement is, that "at the time when the brakeman called to him he did not appear to hear at all, but it seems he was right on the track, it was all done so quick." He was then upon the track. No witness states that he did not look as he came out of the waiting room. There were several circumstances calculated to mislead him. A street car might have been expected to arrive at any moment. He was in the waiting room, where he could not see what was transpiring on the outside. There was no bell ringing or whistle blowing; no noise of an engine attached to the car; none of the circumstances by which the movement of a railway car is usually distinguished. He came out hurriedly, under the impression, evidently, that a street car was arriving. There is evidence from which it may be inferred that the moving car was some distance away when he came upon the platform, and there was nothing to warn him of its approach in the darkness, except the lantern on its platform. Do these facts so plainly show that by looking the car must necessarily have been seen, as to require the inference either that he did not look, or that if he looked he saw the car, and went heedlessly on? . We think not.

3. The three adult sons and Mrs. Smith show no actual damages resulting to them from the death of their father, and were not entitled to recover. Railway v. Johnston, 78 Texas, 536; McGown v. Railway, 85 Texas, 289.

A writ of error has been sued out against the three adult sons by the other plaintiffs, and we are asked, in case we should hold that the judgment permitting them to share in the recovery was erroneous, that a reapportionment be made, and that the shares allowed to those who were not entitled to recover, or the greater part thereof, be adjudged to the other plaintiffs. We can not say that the court below would have allowed so large a sum to those plaintiffs had nothing been adjudged to the persons who were entitled to nothing. Presumably they were allowed compensation for the loss which, in the opinion of the lower court, they sustained in the death of the husband and father; and it would not be proper for us to add to that a sum which, according to the finding of the court, others would have received in benefits from the deceased. In the Johnston case the court reversed the judgment because of the recovery by parties not entitled, and announced that the cause would be remanded for a new trial, unless the sums so recovered were remitted. That case was tried by jury, and the court could not properly render judgment. This was tried before the court, and no such difficulty exists. The judgment will be reversed, and judgment will be here rendered for the plaintiffs Charlotte De Bajligethy, Salina De Bajligethy, Zilmer De Bajligethy, Laura De Bajligethy, Ella De Bajligethy, and Louisa De Bajligethy, for the sum of $3111, of which one-third is apportioned to Charlotte, and the other two-thirds are divided equally between the others named; and against the other plaintiffs, Bonaparte De Bajligethy, C. N. A. De Bajligethy,

Artilla De Bajligethy, and Mrs. Aurelia Smith, that they take nothing, etc. The costs of the appeal are adjudged against appellees; and the costs of the writ of error are adjudged against plaintiffs in error. The amounts recovered below by the plaintiffs, in whose favor we render judgment, was not excessive.

*Reversed and rendered.*

Delivered September 20, 1894.

### ON MOTION FOR REHEARING.

WILLIAMS, ASSOCIATE JUSTICE.—In our conclusions filed in this case, we held that the finding of the district judge, that it did not appear that deceased before going upon the track did not look for the approach of cars, was justified by the evidence. Upon a re-examination of the facts we are constrained to modify this conclusion, and to hold, that while it may be possible, consistently with the evidence, that he did look, the inference rendered most probable, and which ought therefore to be adopted, is, that he did not look. But the circumstances stated in the opinion are such as, in our judgment, are sufficient to reasonably excuse his act in attempting to cross the track as he did, and free him from the charge of contributory negligence.

In our conclusions, we stated that the deceased came out of the waiting room onto the *platform*. There is in fact no platform, but only the sidewalk or passage way referred to in the opinion, between the house and the track, and which we inadvertently called the platform. With these corrections in our conclusions, the motion is overruled.

*Overruled.*

Delivered October 25, 1894.

This case did not reach the Reporter with the October cases.