INTERNATIONAL & G. N. RY. CO. v. BERTHEA. (No. 1502.)*

(Court of Civil Appeals of Texas. Texarkana. Nov. 3, 1915. Rehearing Denied Nov. 18, 1915.)

1. CARRIERS ☞322 — CARRIAGE OF PASSENGERS—INJURIES TO PASSENGER—FINDINGS.

In a passenger's action for injuries caused by derailment of the train, a finding by the jury that a defect, in that one of the two broken rails which first gave way, could not have been discovered by the highest care, did not require judgment for defendant, since it did not attribute the cause of derailment to that rail, and since the court was presumed to have found that such defective rail was not the proximate cause of the derailment.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. ☞322; Trial, Cent. Dig. § 860.]

2. APPEAL AND ERROR ☞931—REVIEW—PRESUMPTIONS.

When a special answer does not find all the facts necessary to form the basis of a judgment, but does answer all the questions submitted, the court is presumed to have found the omitted facts necessary to support the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3728, 3762–3771; Dec. Dig. ☞931.]

3. CARRIERS ☞320 — CARRIAGE OF PASSENGERS — INJURY TO PASSENGER — PROXIMATE CAUSE.

In a passenger's action for injuries in a derailment of the train, where it appeared that the rail first struck by the train was splintered for a distance of about five feet, but that its base remained in place, while the end of the next rail was entirely broken off for two feet, and was found hanging in a truck, it could not be said, as

a matter of law, that the breakage in the first rail was the proximate cause of the derailment, although such rail contained a hidden defect.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1118, 1126, 1149, 1153, 1160, 1167, 1179, 1190, 1217, 1233, 1244, 1248, 1315–1325; Dec. Dig. ☞320.]

4. CARRIERS ☞322 — CARRIAGE OF PASSEN-GERS—INJURIES TO PASSENGER—FINDINGS—CONSISTENCY.

In a passenger's action for injuries in a derailment of the train, a finding by the jury that a hidden defect in the first rail that gave way was not discoverable by the highest care was not in conflict with another finding that defendant had not used a high degree of care to have the rails at the place of derailment in reasonably safe condition, when considered in connection with the court's finding that the proximate cause of the derailment was not the rail containing the hidden defect, but the rail next thereto.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. ☞322; Trial, Cent. Dig. § 860.]

5. TRIAL ☞365—SPECIAL FINDINGS.

A finding upon a special issue submitted to the jury becomes immaterial when other facts have the legal effect to eliminate the issue embodied in such finding.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 871–874; Dec. Dig. ☞365.]

6. CARRIERS ☞318 — CARRIAGE OF PASSEN-GERS—ACTION FOR INJURIES—ROADBED—EV-IDENCE.

In a passenger's action for injuries sustained in a derailment of the train, evidence *held* sufficient to sustain a finding that defendant was negligent in failing to maintain a rail securely spiked to the ties.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1270, 1307–1314; Dec. Dig. ☞318.]

Appeal from District Court, Rusk County; W. C. Buford, Judge.

Action by J. F. Berthea against the International & Great Northern Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Appellee, a passenger on appellant's regular south-bound passenger train, was injured by the derailment of the main line of the coach in which he was riding, in consequence of the breakage of certain track rails. This action was brought to recover damages for the injuries thus sustained, and a recovery by appellee was had.

According to the evidence, which is undisputed, two rails of the track, adjoining each other on the same side of the track, were broken as follows: Between 18 inches and 2 feet was entirely broken off of the end of one of the rails, and between 4½ and 5 feet of the ball of the south end of the next or north rail was shivered or broken off down to the web or base of the rail. The broken portion of the south rail was found hanging in the trucks of the derailed chair car. The web or base of the north rail remained and was still on the ties. An examination of the broken end of the south rail disclosed no inherent defect or flaw in it, but inside the ball that was shivered off the north rail at the point of breaking there was

found a hollow defect or flaw made in the molding of the rail. The flaw in the north rail was so wholly concealed inside the rail as not to be discoverable by inspection. The evidence supports the finding of the jury, on special issue, that the defect causing the break in the north rail was not discoverable by the exercise of a high degree of care before the injury. And there is evidence to support the further findings comprehended in the verdict of the jury, and the judgment of the trial court, that as to the breaking of the south rail appellant was guilty of negligence, and such negligence proximately caused the injury. The evidence warrants the amount of the verdict.

Morris & Sims, of Palestine, and Futch & Tipps, of Henderson, for appellant. Felix J. McCord, of Longview, and J. W. McDavid, of Henderson, for appellee.

LEVY, J. (after stating the facts as above). [1] The jury answered "No" to the following question propounded:

"Could the servants and agents of the defendant company, by the exercise of that degree of care which a very prudent and cautious person would have exercised under the same or similar circumstances, have discovered the defect in the rail which first gave way on the occasion of the wreck complained of in this suit?"

And the appellant, by its fourth assignment of error, complains of the refusal of the court to enter judgment in its favor on the finding by the jury. The answer of the jury goes to the extent only of finding as a fact that the defect "in the rail which first gave way" was not discoverable before the time of the derailment by the highest degree of practicable forethought and skill. The answer does not attribute or refer the cause of the derailment to the track rail which first gave way or broke, and there does not appear in the record any other finding by the jury respecting the proximate cause of the derailment to be considered in connection with the instant answer. Therefore the assignment must, we think, be overruled, for it is believed that in the circumstances there was presented for decision in point of fact by the jury or court the vital question of the proximate cause of the derailment was a fact necessary to support a judgment for appellant; for, under doctrine of law, the finding by the jury of want of negligence on the part of appellant in respect to the breakage of one of the track rails would not have the legal effect to relieve of liability, unless it further appears as a fact that such defective rail, for which appellant was not responsible, was the proximate cause of the derailment.

[2] When a special answer does not find all the facts necessary to form the basis of a judgment, but does answer all the questions submitted, the court is presumed to have found from the evidence the omitted facts necessary to support the judgment ren-

dered by him, if the evidence authorizes the fact thus presumed. Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 639; article 1985, R. S. And, as the trial court entered judgment for the plaintiff, it must be assumed, in support of his judgment, that he concluded as a fact, and which has evidence to support it, that the particular defective rail, which the jury found the appellant was not legally responsible for, was in the evidence only a condition, and not the efficient cause of the derailment.

[3] The fact appears without dispute that the smoker and chair car of appellant's south-bound passenger train were derailed. It happened in a cut on the main line. The track there was level and straight, and on dry, sandy ground, and, according to the evidence, was surfaced, in good alignment, and had good, new ties. The rails were 75-pound rails, but the employés did not know how long a time they had been in use. Immediately after, and with the purpose of ascertaining the cause of the derailment, a passenger on the train and certain experienced employés of appellant made an examination of the physical evidences on the ground. They found two rails of the track, adjoining each other on the same side of the track, broken, as follows: Between 18 inches and 2 feet was entirely broken off of the north end of one of the rails, and between 4½ and 5 feet of the ball of the south end of the next or north rail was shivered or broken off down to the web or base of the rail. The broken portion of the south rail was found hanging in the trucks of the derailed chair car. The web or base of the north rail remained and was still on the ties. An examination of the broken end of the south rail disclosed no defect or flaw in it, but inside the ball that was shivered off the north rail at the point of breaking there was found a hollow defect or flaw made in the molding of the rail. The witnesses say that the flaw in the north rail was such as to weaken the strength of the rail, and was so wholly concealed inside the rail as not to be discoverable by inspection, and could not be seen if the rail had not been broken. An inspection of the roadbed and track had been made before the derailment, and it appeared sufficient. The engineer testified that as the train approached the cut he felt something give way under the back drivewheel of the engine, and heard a drivewheel "knocking," and he at once applied the air in the emergency to stop the train immediately. Upon applying the air the engineer looked back towards the train and saw the rear cars careening. The train stopped quickly after the air was applied. The engine, baggage car, and front trucks of the next or combination car all remained on the track. These are all the facts and circumstances relied on to show the cause of the derailment. Taking the engineer's

affirmative evidence, it must be said, as a fact, that there was a breakage of two track rails under the weight of the engine as it passed over them. An examination of the track made immediately afterwards disclosed, it appears, that the breakage in the two rails was not of the same kind and character. About 2 feet was entirely broken off of the north end of the south rail, and such broken off part was off the ties, hanging in the trucks of chair car. The ball of the south end of the next or north rail for the length of about 5 feet was shivered off, and the web or base of the shivered portion of the rail remained and was still on the ties; and it appears without dispute that after the giving way of the rails under the engine the baggage car and the front trucks of the combination car passed over the broken rails without derailment. Thus, in the circumstances, the derailment of the rear cars cannot be attributed and referred absolutely to the fact of breakage in the north rail. The further fact that 2 feet of the south rail was entirely broken off and an open space for that length left in the track might, it could reasonably be said, have been the cause of the derailment; for such open space would permit and allow the wheel of the car to sink down to the ties for the lack of that much rail to support it. It presents a physical situation at least which the jury or the court might infer was the proximate cause of the derailment; and the physical situation presented in the breakage of the north rail does not necessarily exclude any other inference than that such breakage solely or proximately caused the derailment. A jury or the trial court may have legitimately drawn the inference or conclusion that only the shivering off of a part of the rail, its under part or base remaining spiked to, the ties, did not solely or proximately cause the derailment. It is true that a witness stated that the breakage of the north rail caused the derailment; but his answer was an opinion purely, and became but a circumstance for consideration by the court or the jury. It is not thought, in view of the circumstances proven, that this court can properly say, as a matter of law, that the breakage in the north rail was the sole or proximate cause of the derailment.

[4] It is further contended by the eighth assignment of error that the above-stated special finding of the jury is in conflict with their answer to the third question propounded, and that the findings would not support a judgment for appellee. The third question, in substance, asked the jury to say whether or not appellant had used a high degree of care to have the track and rails in a reasonably safe condition at the place of derailment, and the jury answered, "No." Giving, as the jury did, the general answer "No" to the question, the verdict may, it is true, be construed, and have the effect, as being a finding

that appellant was negligent in respect to both of the broken rails in evidence; and such finding may seem, as appellant insists it is, apparently inconsistent with the further finding in the special answer that appellant was not negligent in respect to the breakage in the north rail. But when the findings are read in the light of the further finding by the court, as comprehended in his judgment, of the proximate cause of the derailment and injury being the south rail, any legal inconsistency or contradiction disappears. If the appellant were negligent in respect to the north rail, but such negligence did not cause the derailment, the appellee could not, as a matter of law, recover on this particular ground of negligence had it been the only ground. And likewise, if the appellant were not negligent in respect to the north rail, it would not, as a matter of law, be entitled to a judgment, unless it appeared as a further fact that the defective north rail, for which condition appellant was not legally responsible, was the proximate cause of the derailment and injury. But if the broken south rail, respecting which the jury found negligence, was the proximate cause of the derailment and injury, as comprehended in the judgment of the court, the appellee was entitled to a judgment, irrespective of whether appellant was negligent or not negligent respecting the north rail, which appeared, as a fact, not to be the proximate cause of the injury.

[5] A finding upon a special issue submitted to the jury becomes immaterial when other facts have the legal effect to eliminate the issue embodied in such finding. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672. Therefore, in the light of the finding by the court, as comprehended in his judgment, there was no such legal conflict in the findings of the jury as to warrant a reversal.

It is contended by the second assignment of error that the court erred in submitting certain matters in question 3 about which there was no dispute in the evidence. It is not believed that this worked any injury to appellant such as to warrant a reversal.

[6] It is thought that there is evidence in the record to establish in favor of appellee the issue of negligence proximately causing the injury, in respect to the broken south rail in the track; and the fifth and seventh assignments of error are overruled. It appears that the end of the south rail broke entirely off, and to such an extent as to permit and allow a derailment. There was no hidden flaw or defect in this rail, as affirmatively appears; and its breaking is accounted for by the weight of the engine passing over it. The engine drawing the train was large and heavy; and from the fact that the broken part was found hanging in the trucks of the chair car the inference was permissible that the rail was not sufficiently spiked to the ties, which were shown to be new ties laid on a well ballasted roadbed, to hold it as nearly as possible in place if a break in the rail should occur. It is not shown that it was a new rail, nor that its weakness could not have been as well ascertained before the break as after.

The judgment is affirmed.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes