GALVESTON, H. & H. R. CO. v. SLOMAN et ux. (No. 7359.)

(Court of Civil Appeals of Texas. Galveston. March 13, 1917. Rehearing Denied May 3, 1917.)

1. PLEADING ☞34(3)—INFERENCES.
In determining whether a special issue is within plaintiff's pleading, all reasonable inferences from the facts alleged in the pleadings as a whole should be made in aid thereof.
[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 69.]

2. RAILROADS ☞351(22)—INJURIES AT CROSSING—SUBMISSION OF ISSUE.
In an action against a railroad for a death in a crossing accident, where the issue of discovered peril became the only one applicable to the developed facts of the case, the court properly submitted it alone, and would have been in error had it done anything else.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1214.]

3. RAILROADS ☞338—INJURIES AT CROSSING—DISCOVERED PERIL.·
Where a railroad's train crew discovered the peril of one negligently attempting to cross ahead of the train in his automobile, the road came under a new duty to use the means then reasonably at hand or within its power to prevent the collision.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099.]

4. RAILROADS ☞338—INJURIES AT CROSSING—DISCOVERED PERIL.
Where a railroad's train crew discovered the peril of decedent, who was negligently attempting to make a crossing in front of the train in his automobile, the road was not liable for the death in collision, unless after discovering the peril it could have avoided the collision by a proper use of the means at hand.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099.]

5. RAILROADS ☞338—INJURIES AT CROSSING—NEGLIGENCE—DISCOVERED PERIL.
In an action against a railroad for death in a crossing collision, where the issue of discovered peril intervened on trial, all issues of original negligence became immaterial.
[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099.]

6. RAILROADS ☞352—CROSSING ACCIDENT—FINDINGS—CONFLICT.
In suit against a railroad for a death in a crossing collision, where one finding determined that decedent was approximately 160 feet from

the locomotive when his automobile attempted to turn to the right to make a crossing, and when the engineer or fireman realized or discovered that he would attempt to cross the track, but in another finding it was declared that the engineer or fireman realized or discovered that he was in imminent danger or was going to attempt to cross the track in front of the train before he turned to the right at the crossing, such findings were in irreconcilable conflict.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1216.]

7. RAILROADS �köp338—INJURIES AT CROSSING —DISCOVERED PERIL.

Where a railroad train crew discovered the peril of decedent, who was about to attempt a crossing in front of the train in his automobile, the use of danger signals, such as the continuous ringing of the bell, the blowing of the whistle, and also the checking of the speed of the train, were within the road's new duties.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1096–1099.]

8. RAILROADS ⊙köp346(5)—INJURIES AT CROSSING—NEGLIGENCE—PRESUMPTION.

In suit against a railroad for a death in a crossing collision, in the absence of evidence it will not be presumed that decedent was guilty of wanton negligence in attempting the crossing ahead of the train in his automobile.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1121.]

9. DEPOSITIONS ⊙köp88—COMPETENCY—TIME OF TRIAL.

The facts and law existing at the time of trial and of the offering of a deposition in evidence, and not at the time of its taking, must be looked to ordinarily to determine its competency.

[Ed. Note.—For other cases, see Depositions, Cent. Dig. §§ 234–236½, 242–245.]

10. DEATH ⊙köp72—ACTION FOR—EVIDENCE.

In an action against a railroad for death of plaintiffs' minor son, testimony concerning plaintiffs' pecuniary condition was admissible as bearing on their reasonable expectation of aid from their son.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 91.]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by Charles W. Sloman and wife against the Galveston, Houston & Henderson Railroad Company. From a judgment for plaintiffs, defendant appeals. Reversed and remanded.

John L. Darrouzet, of Galveston, and Jno. T. Garrison, of Houston, for appellant. F. Spencer Stubbs, Marion J. Levy, and James B. & Charles J. Stubbs, all of Galveston, for appellees.

GRAVES, J. This is an appeal properly perfected and presented here by the Galveston, Houston & Henderson Railroad Company from a judgment of the Tenth district court of Galveston county, Tex., entered November 4, 1915, against it in favor of Charles W. Sloman and his wife, Sarah Jane Sloman, who were the parents of Wiley W. Sloman, deceased, separately for $3,750 each, awarded them as damages for the loss of pecuniary benefits alleged to have been reasonably expected by each of them from their said son,

who had been struck and killed on November 23, 1913, by one of appellant's locomotives, operated by its employés, at a public crossing of its railroad by the public road from Texas City to Galveston, at a point between La Marque and Texas City Junction. At the time of the accident said Wiley W. Sloman was driving an automobile along said public road, both the automobile and the locomotive moving in the same direction towards Galveston, and the two collided at the point stated; the automobile being wrecked and said Wiley W. Sloman killed.

The public road along which the automobile was traveling ran almost parallel with the railroad to a point about 60 feet opposite said crossing, where it turned almost at right angles across the railroad; but there was a dirt road which continued south toward Texas City, likewise practically parallel to the railroad from this point or corner, from which the other public road, which was a shell road, turned, as stated, to cross the railroad; in other words, the public road, which, north of this turning point therein, practically paralleled the railroad and was of shell, continued from the point likewise practically parallel to the railroad on down toward Texas City, but was of dirt from almost said turning point on south.

The pleadings upon both sides contained many charges and countercharges of negligence and contributory negligence; but the case was submitted by the court to a jury upon special issues, which embodied the question of discovered peril only, these issues, with the jury's answers thereto, being as follows:

Special issue No. 1: "Did the defendant's servants in charge of the engine that was in collision with the automobile discover the danger of Wiley W. Sloman and realize the peril of Wiley W. Sloman in time to have avoided such collision in the exercise of ordinary care?" To which the jury answered: "Yes."

Special Issue No. 2: "If you answer the foregoing question in the affirmative—that is, 'Yes' —but not otherwise, you will then answer the following: What damages have been sustained by plaintiff, Charles W. Sloman, and Sarah J. Sloman? In this connection you are instructed that no recovery can be had for mental grief or agony, and that you can only assess such damages as you may believe from the evidence as will be equal to the present money value (if paid now all at one time) of such pecuniary aid as plaintiffs had a reasonable expectation of receiving from the deceased, Wiley W. Sloman, if he had lived." To which the jury answered: "We, the jury, find for Charles W. Sloman damages in the sum of $3,750, and in favor of Sarah J. Sloman in the sum of $3,750."

Special Issue No. 4. "Ascertain and determine from the evidence where the deceased, Wiley W. Sloman, was when the engineer or fireman realized or discovered that the deceased, Wiley W. Sloman, would attempt to cross the track." To which the jury answered: "Approximately 156 feet from the locomotive when auto attempted to turn at crossing."

Special issue No. 7: "Ascertain and determine from the evidence if the engineer or fireman realized or discovered that the deceased,

---

⊙köpFor other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Wiley W. Sloman, was in imminent danger or was going to attempt to cross the track in front of the train before the said deceased, Wiley W. Sloman, turned to the right at said crossing." To which the jury answered: "Yes."

Special Issue No. 8: "Ascertain and determine from the evidence if, just at and before the time of the accident, Wiley W. Sloman was trying to reach the crossing and pass over the same before the train could reach the crossing." To which the jury answered: "Yes."

Under its nineteenth assignment appellant contends that this issue of discovered peril, thus alone submitted to the jury, was not raised by the pleadings of plaintiff, and hence its submission was unauthorized.

[1] This contention is without merit, because paragraph 12, together with several other related parts of the trial petition, among them paragraphs 5, 7, and 11,' while not as full and specific as they might have been, did, in our opinion, both put in issue, and, upon the evidence thereunder presented, properly invoke the application of the doctrine of discovered peril; all reasonable inferences from the facts alleged in the pleadings as a whole should be made in aid thereof. Brackenridge v. Claridge, 42 S. W. 1005; Ins. Co. v. Woodward, 18 Tex. Civ. App. 496, 45 S. W. 185; Canal Co. v. Sims, 82 S. W. 531; Ry. Co. v. Kelly, 83 S. W. 855; Ry. Co. v. Rollins, 89 S. W. 1099; Landrum v. Stewart, 111 S. W. 769; Ramon v. Saenz, 122 S. W. 928; Sievert v. Underwood, 58 Tex. Civ. App. 421, 124 S. W. 721; Ball v. Water Corporation, 127 S. W. 1068; Trezevant & Cochran v. Powell & Co., 61 Tex. Civ. App. 449, 130 S. W. 234; Ry. Co. v. Gilbert, 130 S. W. 1037; Mack v. Ry. Co., 134 S. W. 846; Walker & Sons v. Fisk, 136 S. W. 101; Shelton v. Cain, 136 S. W. 1155; Gibbens v. Bourland, 145 S. W. 274; Lumber & Creosoting Co. v. Maris, 151 S. W. 325; Hoechten v. Standard Home Co., 157 S. W. 1191.

[2] Indeed, we agree with the trial court that the issue of discovered peril became the only applicable one to the developed facts of the case. That being so, not only did the court commit no error in submitting it alone, but would have reversibly erred had it done anything else.

This conclusion logically negatives appellant's persistent contention throughout its brief that the court found it guiltless, and deceased, Wiley W. Sloman, correspondingly guilty, of negligence. Such is not at all the necessary effect of the court's action. It merely held that, in the manner and sense next hereinafter discussed, the negligence of both participants in this fatal collision faded into nothingness upon the intervening of Sloman's discovered peril, and yielded its place to the new duties imposed by that condition and situation, and the fresh obligations upon appellant the law at once read into it.

[3] What were these new duties? To use the means then reasonably at hand or within its power to prevent the collision and the consequent killing of Sloman.

[4] Did appellant do this, did it meet this new duty, and, if not, does it further reasonably appear that, had it done so, the collision could, and probably would, have been avoided? The record does not vouchsafe us this information, and, because it does not, this cause must be reversed.

[5] Likewise, and for the same reason, must fall the contention of appellant that it was entitled to a peremptory instruction to find for it, because of its claim that no act of negligence furnishing the direct and proximate cause of the injuries was shown against it. The fallacy in this position is that, the issue of discovered peril having intervened, in fact supervened, as the trial court rightly held it had, all issues of original negligence as such—that is, as the independent basis of any liability, or the freedom from it—became in a sense immaterial; and the new duty arising out of the doctrine of discovered peril took its place. These closely related doctrines of negligence and discovered peril have perhaps been sometimes confused, but we think the legal effect of the latter is clearly stated in the plain Anglo-Saxon words of Judge Denman, speaking for our Supreme Court in Railway Co. v. Breadow, 90 Tex. 30, 36 S. W. 412, as follows:

"If defendant, through the parties in charge of the engine, knew of Breadow's peril in time to have avoided same, such knowledge imposed upon it the new duty of using every means then within its power, consistent with the safety of the engine, to avoid running him down, and a failure so to do would render it liable, notwithstanding he may have been guilty of contributory negligence in being exposed to the peril. This new duty and liability for its breach is imposed, upon principles of humanity and public policy, to prevent what would otherwise be, as far as civil liability is concerned, the licensed destruction of persons negligently exposing themselves to peril. The same principle of law which, on grounds of public policy, will not permit a person to recover when his own negligence has proximately contributed to the injury, will not permit the party who has inflicted the injury in violation of such new duty to defend upon the ground of such negligence."

To the same effect are Ry. Co. v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1114; Ry. Co. v. Reynolds, 103 Tex. 36, 122 S. W. 531; Sanches v. Ry. Co., 88 Tex. 120, 30 S. W. 431; Higginbotham v. Gulf, C. & Santa Fé R. Co., 155 S. W. 1027; Ry. Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442; Ry. Co. v. Hanna, 34 Tex. Civ. App. 608, 79 S. W. 639; Ry. Co. v. Wear, 33 Tex. Civ. App. 492, 77 S. W. 272; Gehring v. Elec. Co., 134 S. W. 291.

Manifestly these considerations also obviate a discussion of all those assignments in the briefs of both parties here relating to their negligence and contributory negligence, respectively, because the other findings of fact thus limited the case to one of discovered peril, and had the legal effect of eliminating the question of original negligence. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 872,

40 L. R. A. (N. S.) 672; Ry. v. Berthea, 179 S. W. 1087; Lobland v. Greenwood, 181 S. W. 517–519; Thornton v. Goodman, 185 S. W. 926–929. We, therefore, without particularizing them, overrule all assignments and cross-assignments of both litigants, in so far as they relate, in behalf of either party, to the issues of original negligence as the basis of a cause of action or a ground of defense, and in all other respects, except in so far as they may bear upon the one relevant issue of discovered peril.

[6] Returning to a consideration of the jury's answers, there is an irreconcilable conflict in the findings embodied in issues Nos. 4 and 7. In the former it is determined that deceased, Wiley W. Sloman, was approximately 156 feet from the locomotive when his automobile attempted to turn at the crossing, and when the engineer or fireman realized or discovered that he would attempt to cross the track; while in the latter it is declared that the engineer or fireman realized or discovered that he was in imminent danger, or was going to attempt to cross the track in front of the train, before he turned to the right at said crossing. As above stated, the physical facts were that the road Sloman was traveling before turning at said corner to cross the railroad track continued on parallel to, and about 60 or 70 feet distant from, the railroad toward Texas City; and this record discloses not a solitary circumstance which would have reasonably indicated to the engineer or fireman—situated as they were then shown to be toward him —that Wiley W. Sloman, while yet on that parallel road and moving in the same general direction as the train, intended either to turn that corner or to attempt to cross the railroad track in front of that engine, but for all that reasonably appeared to either of them, like Tennyson's little brook, he might have gone on down that road and paralleling that railroad forever in perfect safety. In other words, the entire record discloses no evidence of any probative force whatever to sustain the finding under special issue No. 7; hence it must fall, leaving only the finding under special issue No. 4 remaining under this phase of the case. It is therefore self-evident that Wiley W. Sloman could not possibly have been in peril from that locomotive until he turned that corner and started across the railroad track in front of it. Then it was that the jury found, under said issue No. 4, that his peril at that moment intervened and was realized or discovered by the engineer or fireman; and all application in this case of the new duty upon appellant, arising under the doctrine of discovered peril, must necessarily be alone referable to conditions existing at and subsequent to that particular time. Gauged by these tests, it then became appellant's bounden duty to use the means at its command to avert the collision, whatever the fault of Sloman at that same moment. Ry. v. Breadow, 90 Tex. 30, 36 S. W. 412, and Ry. Co. v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1114, both supra. But under all these cited decisions of our courts the doctrine of discovered peril does not stop here, but goes a step further, and requires that it must have been at least possible, after such discovery, for the collision or injury to have been avoided by the proper use of the means at hand. And in this respect also this record is wanting.

[7] It will not do to assume, as appellant does, that plaintiffs were concluded by the uncontradicted fact that the engine, running as it was between 40 and 50 miles per hour, could not have been stopped within the approximately 156 feet then left between it and the point of collision; because the giving of warning danger signals, such as the continuous ringing of the bell, the blowing of the whistle, and the checking of the speed of the train, were likewise, under the conditions shown here, possible means at its hand, and the use of them was within its new duties. Ry. Co. v. Reynolds, 103 Tex. 36, 122 S. W. 531; Ry. Co. v. Smith, 87 Tex. 357, 28 S. W. 520; Ry. Co. v. Weisen, 65 Tex. 443; Ry. Co. v. Hanna, 34 Tex. Civ. App. 608, 79 S. W. 640; Ry. Co. v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1114.

It is true that the jury found, in answering issue No. 1, that Sloman's danger had been discovered and his peril realized by appellant's servants in charge of the engine in time to have avoided the collision, in the exercise of ordinary care by the use of the means at their command; but this may have been, and very probably was, based upon its other finding under issue No. 7, which we have held unsupported by the evidence, that they realized or discovered his imminent danger, or that he was going to attempt to cross the track in front of the train, before he reached and turned toward the railroad at the crossing.

[8] It is further true that under issue No. 8 it was found that Sloman, just at and before the time of the accident, was trying to reach and pass over the crossing before the train could reach it, and we agree with appellant that this necessarily included a finding that he saw and knew of the approach of the train; but this conclusion alone still does not acquit appellant, because it does not disclose, nor is there any evidence upon that most important inquiry, just where Sloman was with reference to the railroad track when that knowledge came to him. For aught that appears in this record, he might at that very moment have been so near across the track that one warning blast of that engine bell or whistle would have been worth a thousand at any other moment, and have enabled him to clear it and escape the fatal impact or he might then have been so far short of reaching the railroad track that he could have stopped his automobile and saved

himself; for, in the absence of evidence establishing it as a fact, it will not be presumed that he was guilty of wanton recklessness. Wells Fargo & Co. v. Benjamin, 165 S. W. 123; Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049; Ry. Co. v. De Bajligethy, 9 Tex. Civ. App. 108, 28 S. W. 829; Riska v. Ry. Co., 180 Mo. 168, 79 S. W. 448; Wilson's Adm'r v. Ry. Co. (Ky.) 86 S. W. 691; Crumpley v. Ry. Co., 111 Mo. 152, 19 S. W. 820; Ry. Co. v. Gibson, 35 Tex. Civ. App. 66, 79 S. W. 352; Ry. Co. v. Emma Gibson, 83 S. W. 862, affirmed in Supreme Court 99 Tex. 98, 87 S. W. 814.

Nor must it, at this point, be overlooked that the undisputed evidence showed that an automobile going at the rate of speed his was at the time in question—that is, somewhere from 16 to 25 miles per hour—could be stopped within a distance of 30 feet. With this record otherwise in the condition it is, who can say that one shrill and almost instantaneous danger signal from either bell or whistle, or both, at the very moment the jury found the engineer or fireman realized or discovered that Sloman was thus approaching the crossing, and when they were about 156 feet apart, would not have averted the collision? Certainly this court cannot; and, as already stated, the jury have not. If such signal could have been both given and heard by Sloman at about that fateful moment, his automobile, under the undisputed testimony here, could have been stopped within half the 60 feet then intervening between it and that railroad crossing. If the approximately 156 feet found by the jury under issue No. 4 meant the straight line distance between the automobile and the engine, and we think it may be presumed it did, then the perpendicular side of the right triangle thus formed by the meeting of the two roads at the point of collision and such straight line, along which perpendicular line the engine was running, may be found by a simple geometrical calculation, and the engine was then about 144 feet from the crossing. But both parties have in this record apparently treated that distance as the 156 feet found by the jury, and attention is called to it for its possible bearing, upon another trial, upon the question of the time within which the engineer and fireman might have used the means at hand in the effort to avert the collision.

The testimony was confined almost exclusively to the distance within which the train could have been stopped, there being no evidence on the possibility of checking or slacking it. The testimony is conflicting as to whether or not the bell was rung at all, and the jury made no specific finding upon that particular question either way. In this connection, we think the cross-assignments of appellees raising that issue are well taken and should be sustained.

As to the blowing of the whistle, the undisputed evidence is that it sounded four blasts back at the whistling post, which was about ———— feet north of the crossing, but did not sound again between there and the crossing.

Our stated conclusions upon the controlling questions presented, requiring, as they do, a reversal of the judgment, have made a seriatim discussion of the different direct and cross assignments in the briefs of both parties unnecessary, but, in so far as not specifically herein treated, they are each and all overruled.

[9] In view of another trial, attention of the trial court is called to our above-stated holding as to the relevancy of the testimony bearing upon the issues of negligence, contributory negligence, and discovered peril. We also hold that the deposition of the witness Henry A. Smith was improperly excluded, and that his testimony should have been admitted. The authorities seem to hold that the facts and law existing at the time of the trial and of the offering of the deposition in evidence, and not at the time of the taking of the deposition, must be looked to ordinarily to determine its competency. Webster v. Mann, 56 Tex. 124, 42 Am. Rep. 688; Weeks' Law of Depositions, 515, and citations.

[10] We likewise overrule the assignments raising the issue of the insufficiency of the evidence to support the finding that each of the plaintiffs had sustained the amount of damages awarded for the loss of benefits reasonably to have been expected by each from their son, and of the admissibility of their testimony concerning their pecuniary condition. We think this evidence was admissible as bearing upon their reasonable expectation of aid from their son, and that it was sufficient to sustain the verdict. In Ry. Co. v. Knight, 52 S. W. 640, Judge Pleasants says: "It is well settled that the pecuniary condition of the parent, in cases like this, may be shown as a reasonable ground of expectation on the part of the parent for pecuniary assistance." Writ of error was refused in that case by the Supreme Court. Same case is cited with approval in Ry. Co. v. Johnson, 99 Tex. 342, 90 S. W. 164, and Ry. Co. v. White, 23 Tex. Civ. App. 280, 56 S. W. 206. See, also, Ry. Co. v. Kindred, 57 Tex. 491; Ry. Co. v. Bonnet, 38 S. W. 815.

Pursuant to the views expressed, the judgment is reversed and the cause remanded.

Reversed and remanded.