**HINES, Director General of Railroads, v. FOREMAN et ux.** (No. 8410.)

(Court of Civil Appeals of Texas. Dallas. Feb. 5, 1921. Rehearing Denied March 19, 1921.)

**1. Railroads ⬅350(7, 32)—Neglect to give signal held for jury.**

Whether the trainmen failed to sound the whistle and ring the bell at least 80 rods from the crossing, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6564, and whether such failure was the proximate cause of injuries in a collision with an automobile, *held* questions for the jury.

**2. Railroads ⬅313—Violation of statute requiring signals negligence per se.**

Railroad's failure to blow whistle and ring bell at least 80 rods from public crossing, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6564, *held* negligence per se.

**3. Railroads ⬅351(22)—Discovered peril not sole issue in negligence case.**

In action for injuries at a crossing where the evidence of failure to ring the bell and blow the whistle, as required by Vernon's Sayles' Ann. Civ. St. 1914, art. 6564, was sufficient for submission to the jury, and there was evidence to sustain a finding that there was no contributory negligence, and uncontradicted evidence that after discovery of the peril the engineer used all means in his power consistent with safety to stop and prevent injury, the court properly refused to submit only the issue of discovered peril.

**4. Negligence ⬅83—"Discovered peril" doctrine not available to excuse primary negligence.**

The doctrine of "discovered peril" permits recovery, notwithstanding contributory negligence, if the defendant saw the danger in time to prevent the injury by the use of ordinary care and failed to so do, but the doctrine does not permit defendant to avoid liability for primary negligence by showing that he made reasonable efforts to avert injuries after discovering the dangerous situation caused by such negligence.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Discovered Peril.]

**5. Negligence ⬅141(9)—Issue not removed by that of discovered peril.**

If there are facts to sustain a finding of negligence, the question of negligence remains the principal question to be submitted, and it is not removed from the case by the issue of discovered peril.

Rainey, C. J., dissenting.

Appeal from District Court, Van Zandt County; Joel R. Bond, Judge.

Action by J. M. Foreman and wife against Walker D. Hines, Director General of Railroads. Judgment for plaintiffs, and defendant appeals. Affirmed.

Wynne & Wynne, of Wills Point, for appellant.

Stanford & Sanders, of Canton, and Johnson, Edwards & Hughes, of Tyler, for appellees.

RAINEY, C. J. (dissenting). We quote from appellant's brief the nature and result of the suit, as follows:

"J. M. Foreman and his wife, Minnie Foreman, brought this suit in the district court of Van Zandt county against the receivers of the Texas & Pacific Railway Company, and after the government, through Walker D. Hines, Director General of Railroads, had directed that all suits should be brought against him as Director General and should be prosecuted and judgment entered in conformity with that direction, the appellees in the court below filed their first amended original petition, complaining of Walker D. Hines, as Director General of Railroads, alone. They brought the suit for damages to J. M. Foreman and for the death of their minor son, Earl Foreman, and the destruction of an automobile in which the plaintiff J. M. Foreman and Earl Foreman were riding at the time of the accident. They alleged and charged that the train collided with the automobile at a public crossing of the town of Wills Point, an incorporated city; that the train was traveling west and the appellee J. M. Foreman and his son were crossing the track going south, and the train collided with the car on the crossing, killing Earl Foreman, the minor son, and permanently injuring plaintiff J. M. Foreman, and totally destroying the car. As acts of negligence against the company, they charge:

"(1) That the servants, agents, and employés in charge of the train failed to ring the bell and blow the whistle at least 80 rods east of the crossing before approaching it, and this caused, or contributed to cause, the injuries.

"(2) They charge that the train was being run and operated at a dangerous rate of speed in approaching the crossing that caused the injuries.

"(3) That the servants, agents, and employés in charge of the train failed to keep a proper lookout for persons traveling along the track, and that this was negligence.

"(4) That the servants, agents, and employés in charge of the train, after observing appellee J. H. Foreman and his son and the car in which they were riding, failed to exercise ordinary care to stop the train and prevent injuring them, after it occurred to them that the plaintiff and his son were in danger.

"(5) They allege that appellant failed to have a whistling post at least 80 rods east of the crossing to notify its servants, agents, and employés operating its train when to blow the whistle and commence to ring the bell, to comply with the requirements of the laws of the state, and that this was negligence.

"Appellant filed his original answer, in which he denies each and every allegation in plaintiffs' petition. He charged that J. M. Foreman, appellee, and his son were guilty of contributory negligence in running and operating

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the car in which they were riding that caused or contributed to cause the injury, in this: (1) That the appellee and his son came in from their home, which was to the north of Wills Point, and onto the public street running east and west and parallel with the track of the appellant; that from the time they came out into the public street going west the train of appellant that collided with the car of appellee and his son was in plain view of the appellee and his son, and continued in plain view of them until they reached the crossing upon which the accident occurred, and they failed to look and listen for the approach of the train either at the time they came out on the public street and turned west or at any time until they turned to the south and started across the track; if they had looked back they could have seen the train of appellant approaching; that a man of ordinary care would have looked and listened for the train before driving suddenly upon its track; that in failure to do so the appellee J. M. Foreman and his son were guilty of contributory negligence. (2) That at the time appellee and his son were injured and the car was destroyed they were driving the car in an incorporated city without a muffler cut-out, as is provided by law, and that they were then and there violating the criminal laws of the state and were operating the car in violation of the law, and that this caused, or contributed to cause, the injury to plaintiff and his son, and that by so running the car they were guilty of contributory negligence. (3) He further alleged that in approaching the track of the appellant the appellee in the car failed to slow down his car to six miles an hour before attempting to cross the track, as is required by law, and that they were thereby guilty of negligence that caused, or contributed to cause, the injury.

"Upon these issues the cause went to trial and was submitted to the jury by the trial court on special issues, and on answer of the special issues made by the jury the court, on motion of appellee, entered judgment in favor of appellee for the sum of $5,000, the amount found by the jury in answer to the special issues. The appellant in due season filed his motion to enter judgment on the findings of the jury in favor of appellant, which was overruled by the court. He then filed his motion for new trial and to set aside certain findings of the jury, which motion was by the court overruled, to which action of the court appellant excepted, and gave notice of appeal in open court to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas, at Dallas, and 90 days were allowed by the trial court to complete the record. The appellant in due season filed his appeal bond, and filed his statement of facts, bills of exception, sued out the transcript before the clerk, which was filed in this court on January 15, 1920, thus bringing the cause before this court for review, and asking that it be reversed for the reasons set out in the motion for new trial and assigned now in this court as errors committed in the trial court that should cause the case to be reversed or reversed and rendered.

"For the sake of brevity, assignments of error Nos. 1 and 2 will be considered together:

## "First Assignment of Error.

"The court erred in overruling defendant's special exception to the plaintiffs' petition wherein the plaintiffs charge as an act of negligence the defendant's failure to have and maintain a whistling post at least 80 rods from the crossing on which the accident happened, and permitting the plaintiffs to prove by their witness D. M. Edwards, who was an engineer, that said whistling post was not erected and in place at a point at least 80 rods east of the crossing. This was error, for the reason that there is no law requiring a railroad company to maintain a whistling post at any distance from public crossings, and the pleading in evidence was calculated to deceive the jury in passing upon the other main issues in the cause.

## "Second Assignment of Error.

"The court erred in permitting the witness of plaintiffs, D. M. Edwards, to testify over the objection of defendant that at the time of the accident defendant failed to have a whistling post at least 80 rods east of the crossing; the defendant objecting to said testimony for the reason that the same was irrelevant and immaterial and was no ground of negligence on the part of defendant, and was calculated to mislead the jury on other issues of this cause, more especially would this affect special issue No. 5.

## "First Proposition under First and Second Assignments of Error.

"It is error for the trial court to refuse to strike out immaterial allegations in petition, to admit proof tending to support these immaterial allegations, and to attempt to control it in his charge, for the reason that the same is calculated to mislead and deceive the jury.

## "Statement.

"Before announcement of ready for trial, appellant submitted his general and special exceptions to plaintiffs' petition, especially excepting to that part of appellees' petition in which they charge that the appellant failed to keep a whistling post, properly marked, at least 80 rods east of the public crossing upon which the accident happened. The court overruled appellant's exceptions and the appellant excepted to the action of the court. While D. M. Edwards was on the stand testifying for the appellees he was permitted, over the objection of the appellant, to testify that there was no whistling post, properly marked, standing 80 rods east of the crossing upon which the accident happened at the time of the accident. Appellant objected to this testimony, for the reason that there was no law requiring appellant to keep and maintain a whistling post to notify its agents and servants and employés when to blow the whistle or to commence to ring the bell, and that the admission of this testimony was calculated to mislead and confuse the jury in passing upon the material issues in the case. The objection was by the court overruled, to which action of the court the appellant in open court excepted, and in due season tendered his bill of exception to the trial court, which was approved,

and was assigned by appellant in his motion for new trial."

The cause having been submitted to the jury on special issues and no explanation made as to the ringing of the bell on the engine, the findings of the jury being favorable to the plaintiff, the majority of the court are of the opinion that no error was made, and they have concluded that the judgment for the plaintiff should be in all things affirmed. The writer dissents, and thinks that the fourth assignment of error should, on discovered peril, have been submitted as an issue, as it was clearly raised by the evidence of defendant's engineer, as follows:

"I live in Dallas; my run is between Marshall and Fort Worth. I am an engineer, and have been for about 38 years; I have been in the service of the Texas & Pacific Railway Company since 1882. I was pulling the train which struck J. M. Foreman's automobile; I took charge of the train at Marshall; my train on that date was right on time. When we reached the water tank and were going toward the crossing in question I started the train bell to ringing; when we reached the northwest corner of the graveyard I blew a long whistle for the station; I was then about 80 rods from the crossing on the top of the hill. I only blew one long whistle for the crossing and station, and I'm still doing that. I blew my whistle on the occasion in question; I know I did; I remember it well. I stopped my bell from ringing after the accident; my bell was ringing at the time of the collision. The fireman who was with me at that time is now dead, having been killed since that collision. On the day of the collision my train was headed westward, and I occupied the north side of the engine and the fireman occupied the south side. I remember the occasion of my engine striking the Foreman automobile. I was standing up at the time I observed plaintiff's automobile; I had a drop seat and had kicked a leg up and was standing up with my head out of the window, and I could see all the way up. I had just blown the whistle and turned the cord loose and leaned out the window when I first saw plaintiff's car coming out of the north and south street into the east and west street; I could not tell you whether plaintiff stopped his car as he was going westward or not, but after he turned the corner I think he was making about 10 miles per hour. Plaintiff was in plain view of me all the time from the time he came out of the north and south street into the east and west street and until he made the turn onto the crossing. I had no notice that he intended turning in onto the crossing; I wasn't looking for him to turn that corner; if he had remained in the position he was in and continued in that direction he would have been in no danger. I saw him make the turn onto the crossing; I had gotten nearly to the crossing, was within 150 feet, I guess, when he turned; I still had my head out the window, and as soon as he turned I could see that he wasn't looking toward the train but was looking ahead, and I supposed that he didn't see the train, and I grabbed the brake with my left hand and the whistle with my right hand; I had the brake on before I got to the crossing. I noticed another man in the car with plaintiff after he turned; I did not know who was in the car, of course, until it turned so I could see, and then I saw two people in it. After I saw the automobile turn onto the crossing, I did all I could to stop my train and prevent a collision; I threw on the emergency brakes and was pulling the whistle—hadn't even turned the whistle loose when I hit the automobile; I did all that anybody could have done. From the time the plaintiff turned, I could not possibly have stopped my train and prevented hurting him. At the time of the collision, I don't believe I was making over 20 miles per hour; I was right 'dead on time,' and had shut the steam off on the other side of the water tank; of course, we came down there at pretty good speed and I shut off down there and drift on up; it is a little up grade and I don't think I was running over 20 miles per hour. At the place where the collision occurred I do not think that a train going at 20 miles per hour could be stopped under 300 feet, as it is a little down grade there and you could not stop it as quickly as you could on level track. Yes, sir; I did stop as quickly as could. * * *

"No; we had not stopped at the Wills Point water tank. I sounded the alarm whistle as we were about to reach the crossing in question. On the occasion in question I sounded the regular whistle at the same place where I usually sounded it. After I passed the water tank, and before I reached the crossing in question, I sounded one long whistle—not taking into account the alarm whistle; I sounded the long whistle at the usual place where I always sound it. I don't know whether there was a whistling post 80 rods east of the crossing in question or not; they sometimes get rotten and fall down. I know where the cemetery is on the south side of the railroad track. No; I didn't blow my whistle along about the middle of the cemetery—I blew it about what I thought was a distance of 80 rods from the crossing. The reason I keep mentioning a 'distance of 80 rods from the crossing' is that the company has a rule for the sounding of a whistle 80 rods from a crossing; yes; the law has a rule like that. To the best of my knowledge, I sounded the whistle right about here (witness indicates the trestle on the plat). I could not say just exactly where I usually sound the whistle and just exactly where I sounded it on the day in question, but I will say that it was anywhere from a point opposite the northwest corner of the cemetery to the trestle. Plaintiff was already traveling westward when I first saw him; I sounded the whistle, leaned out the cab window, and saw the automobile. If a person were on the railroad track and there was no noise, the weather being the same as it was on the day of the collision, I believe the whistle of the locomotive of the train in question could be heard for a distance of one mile; I believe it could be heard two miles under ordinary conditions. The automobile never passed out of my view from the time I first noticed it until it ran on the crossing. I was within 150 feet of the crossing when plaintiff turned southwest to the crossing. When I

saw him I grabbed the whistle as quickly as I could; plaintiff did not look at my engine; he drove up and stopped dead still on the track. Plaintiff did not look at me when I sounded the whistle within 150 feet of the crossing— he just looked straight ahead. I started the engine bell to ringing about the water tank; I always start the bell down there; I kept it ringing until after the accident; it rings by air, and all I had to do was to open a little valve. Yes; I knew that the crossing in question was a public crossing; it is not used very much. The reason I took it for granted that this plaintiff wouldn't turn across the railroad track is that I have passed a hundred automobiles and they all go straight and they never have crossed there. If I stopped at that public crossing, I· would have to stop at all public crossings. I complied with the law, I suppose; I sounded the whistle at about what I thought was 80 rods from the crossing; so long as plaintiff was driving ahead he was out of danger, and when he turned and I saw he was going into danger I sounded the distress signal and he never did look up. No; I didn't sound the distress or alarm whistle as my engine struck the car—I sounded it as plaintiff turned the corner; there was another man in the car and that was the man who saw the train, and he jumped up and over the door and was out on the running board, and the man who was driving never did look up; the man who was killed went over the door and onto the running board and the driver went out over the south door. I wasn't pulling No. 25 last Sunday, the 14th of September, because I go west on odd dates."

See Railway Co. v. Sloman, 195 S. W. 322; Railway Co. v. Shetter, 94 Tex. 196, 59 S. W. 533; Railway Co. v. Breadow, 90 Tex. 26, 36 S. W. 410; Railway Co. v. Harrington, 209 S. W. 685; Horton v. Railway Co., 46 Tex. Civ. App. 639, 103 S. W. 468; Railway Co. v. Harrison, 163 S. W. 322.

The doctrine of discovered peril is expressed by the syllabus in an opinion laid down by Mr. Justice Denman, as follows:

"*Contributory Negligence—Discovered Peril— Subsequent Negligence.* If those operating a railway engine discover the peril of one in danger upon or near the track in time to avoid injuring him, a new duty is imposed, of using every means consistent with the safety of the engine to avoid running him down, and default therein would render their employer liable, on principles of humanity and public policy and to prevent the licensed destruction of persons negligently exposing themselves to peril, notwithstanding the person so injured may have been guilty of contributory negligence in being exposed to the peril. But this principle has no application in the absence of actual knowledge of the peril on the part of the persons inflicting the injury, and the burden of proof is on plaintiff to show, not that they might have acquired such knowledge, but that they actually possessed it.

"*Same—Knowledge of Danger—Insufficient Evidence.* Plaintiff's husband was killed by being struck by a switch engine while walking in the switching grounds of a railway, being, when struck, dangerously close to the edge of the side track, on which the engine approached him from behind, and which was 8 or 9 feet from the main line. The fireman testified to seeing him 40 or 50 feet ahead of the engine, but then walking on the main track and in a position of safety, and that, his attention being drawn elsewhere, he then saw him no more till after the injury. No one else on the engine saw deceased. Other bystanders saw him between the tracks when he first entered on them, and ˙ afterwards, about the instant he was struck, but not at the time he was admitted to have been seen by the fireman. Held, that under this evidence the court erred in submitting the issue of plaintiff's right to recover, notwithstanding contributory negligence by deceased, if those operating the engine saw his dangerous position in time to have avoided the accident and failed to make any effort to do so."

Railway Co. v. Breadow, 90 Tex. 26, 36 S. W. 410.

This doctrine was upheld and has ever since been adhered to and followed by the courts of this state. In a late case it was followed in the Court of Civil Appeals sitting at Galveston, and reported in 195 S. W. 322. It is analogous to this case, and to go contrary to it would be in conflict thereto.

In Railway Co. v. Shetter, 94 Tex. 196, 59 S. W. 533, Shetter was struck by a train and injured. The Fourth Court of Appeals certified the case to the Supreme Court, which held that negligence was not presented. Mr. Justice Williams said:

"A ˋperson walking negligently along a railroad track in front of a moving train will sure-ly be hurt unless the train stops or he gets out of its way. In a sense he may be said to be in danger, but those controlling the train are not required to assume that, by his negligent failure to act, he will remain in danger. It is only when they have realized that he cannot or will not get out of the way that the duty of averting a collision arises. Certainly it is at least equally true that trainmen are not bound to assume that a person not on the track will get on it, where it would be negligent and dangerous for him to do so, and, as they would not be bound to assume it, a jury could not properly find that they knew it would be done, in the absence of proof of knowledge."

There was no proof that the engineer knew that the car of the Foremans would turn across the track where it was struck by the engine.

In the case of T. & P. Railway Co. v. Shoemaker, 98 Tex. 451, 84 S. W. 1049, Mr. Justice Williams says that mere proof of an unexplained killing of a person on a railroad track and that the engineer of the train suffered from an impairment of vision does not overcome the presumption that proper watch was kept by those on the engine.

In the Sloman Case, supra, it is said:

"Likewise, and for the same reason, must fall the contention of appellant that it was entitled to peremptory instruction to find for it, because of its claim that no act of negligence

furnishing the direct and proximate cause of the injuries was shown against it. The fallacy in this position is that, the issue of discovered peril having intervened, in fact supervened, as the trial court rightly held it had, all issues of original negligence as such, that is, as the independent basis of any liability, or the freedom from it, became in a sense immaterial; and the new duty arising out of the doctrine of discovered peril took its place. These closely related doctrines ·of negligence and discovered peril have perhaps been sometimes confused, but we think the legal effect of the latter is clearly stated in the plain Anglo-Saxon words of Judge Denman, speaking for our Supreme Court in Railway Co. v. Breadow, 90 Tex. 30, 36 S. W. 412."

W. E. Garabrant, appellant's engineer, was the only witness who testified positively about discovering the car on the track at the time and of the first discovery of it, and plaintiff proved said fact, but the court refused to give the special charge asked by plaintiff, and no other charge was given by the court to the jury, and the court erred in not giving the requested charge, and the writer is of the opinion that plaintiff was entitled to said charge, and for this reason the case should be reversed and remanded.

The first proposition under the fifth assignment contends that—

"Where the defendant pleads contributory negligence on the part of the party who sues for damages by accident to an automobile that results in death and injury by a collision between defendant's train and the automobile, on request the trial court should group the facts, if any, construing contributory negligence and affirmatively presenting the defendant's defense, to aid the jury in intelligently answering the special issues submitted to the jury."

The appellant submitted to the court its special charge in proper time, which was refused.

The majority of the court find no error in the trial court's action, and the judgment is affirmed.

The writer dissents from the holding of the majority.

HAMILTON, J. Appellant's fourth assignment of error, which, in the opinion of the Chief Justice, ought to ·be sustained, is as follows:

"The court erred in submitting to the jury special issues Nos. 1, 2, 3, and 4, for the reason that the undisputed evidence shows that the failure of the defendant's engineer in charge of its train to ring the bell and blow the whistle, if he did, was not the cause of the accident, and the only issue, if any, that should have been submitted to the jury was: Did the defendant's engineer, after he saw the plaintiff change the course of his car, use all the means in his power consistent with the safety of his passengers to stop his train and prevent injuring the plaintiff and his· son? As, under the facts in the case, the negligence of the defendant's agent and servant in charge of the train in failing to ring the bell and blow the whistle, if they did, ceases to be an important inquiry, as the proof shows that plaintiff and his son were in plain view of the engineer operating the train and the train was in plain view of plaintiff and his son for a distance of 400 feet before the accident happened, and if plaintiff and his son had continued to travel as they were then traveling, they were in a place of perfect safety, the new duty of the engineer and servants operating the train intervened, and then the only important issue was, when they saw the plaintiff and his son had changed their course that would place them in danger, Did the engineer in charge of defendant's train then exercise proper care to prevent injuring them? The defendant excepted to the main charge of the court and to these special issues before they were read· to the jury, and here and now presents it in his motion for new trial, and asks that they be sustained."

[1] The evidence in this case raised the issue of negligence as a fact for the jury's determination. That issue was therefore properly left to the jury by the' trial court to determine. The jury did determine it, and found that defendant's agent in charge of the engine, on the occasion of the collision, did not sound the whistle at least 80 rods from the crossing where the collision occurred, nor sufficiently near it to give reasonable warning to persons about to use the crossing, and that this was the proximate cause of the injuries and the death. The jury also found that the engineer did not ring the bell at least 80 rods from the public crossing where the collision occurred and keep it ringing until the locomotive had passed the crossing on the occasion of the injuries and the death, and that this failure was the proximate cause of the same. The jury also found that the engineer did not use ordinary care to avoid injury to the plaintiff and his son at the time. All of these findings were in response to special issues submitted, and the submission of each of which, in our opinion, the evidence justified and required.

[2, 3] The findings that the whistle was not blown and that the bell was not rung as required by article 6564 established appellant's negligence per se; negligence having been found by the jury and there being evidence believed to be sufficient to sustain the finding, and there also being a finding, sustained by evidence, that there was no contributory negligence, appellant's fourth assignment appears to be not well grounded, and we are unable to perceive how appellant can rightfully contend that the court should have submitted only the question of whether or not the engineer used all the means in his power consistent with the safety of his passengers to stop the train and prevent injury after the automobile turned to cross the track. There was no evidence that he did

not do this. The evidence is uncontradicted that he did. Besides, no conclusion could be drawn from the proof other than the conclusion that no means could have been used to stop the train, after the automobile turned, in time to avoid the accident. Hence as to this feature of the case there was no issue raised by the testimony, and if appellant's theory is correct, then the court ought to have instructed the jury to find for appellant. But such instruction could not have been justified, because it would have been equivalent to saying to the jury that, although appellant's servants' negligence proximately caused the perilous situation in which appellee's son lost his life and in which appellee received his personal injuries and sustained the other damage, yet notwithstanding the fact that such negligence was the sole proximate cause, still after this negligence, producing the results complained of, arose, appellant would be free of liability if its employés, upon discovering the peril their negligence had produced, used all means compatible with safety to avoid its natural result. To say that appellant was entitled to have its liability determined by such a test under the facts of this case would, it seems to us, be contrary to all the law of liability for personal injuries. To sustain appellant's contention would be to declare that any injury caused by negligence, however palpable, will be excused upon the tort-feasor showing that, notwithstanding his negligent failure to do his duty in the first instance, he did what he could to avoid harm to the victim of his dereliction after his negligent breach of duty had superinduced it, although he discovered it too late to interpose any prevention.

[4] "The doctrine of discovered peril is a qualification of the general rule that the contributory negligence of the person injured ordinarily bars a recovery." 18 Corpus Juris, p. 1053. It is a doctrine which, in a proper case, the courts apply and say to a defendant that, although the negligence of the injured party brought him into peril and caused him to be where he received the injury, yet if the defendant saw the danger in time to prevent the injury by the use of reasonable care, and did not, after seeing the danger in which the injured party had negligently placed himself, use such care, he cannot rely upon the injured party's negligence to excuse himself from liability. It is not a doctrine available to a defendant as a means of defeating liability for negligence. It is rather a doctrine which enables a plaintiff to recover notwithstanding the contributory negligence of the person who is injured.

[5] So long as any facts sufficient to sustain a finding of negligence remain in a case in which negligence is pleaded, the question of negligence never ceases to be the principal inquiry, and appellant's contention to the contrary and to the effect that in this case the issue of discovered peril removed that of negligence is incorrect. None of the views above expressed conflict with any decision in Texas which has come to our notice. On the contrary, we think they are in harmony with the decisions of our courts. Railway Co. v. Breadow, 90 Tex. 26, 36 S. W. 410; Railway Co. v. Jacobson, 28 Tex. Civ. App. 150, 66 S. W. 1114; Higginbotham v. Railway Co., 155 S. W. 1027; Railway Co. v. Munn, 46 Tex. Civ. App. 276, 102 S. W. 442; Furst-Edwards Co. v. Railway Co., 146 S. W. 1029; Railway Co. v. Sloman, 195 S. W. 323. The doctrine of discovered peril and the reasons to justify it are clearly stated by the Supreme Court in the case of Railway Co. v. Breadow, supra. In that case Judge Denman used this language:

"If defendant, through the parties in charge of the engine, knew of Breadow's peril in time to have avoided same, such knowledge imposed upon it the new duty of using every means then within its power, consistent with the safty of the engine, to avoid running him down. and a failure so to do would render it liable, notwithstanding he may have been guilty of contributory negligence in being exposed to the peril. This new duty and liability for its breach is imposed, upon principles of humanity and public policy, to prevent what would otherwise be, as far as civil liability is concerned, the licensed destruction of persons negligently exposing themselves to peril. The same principle of law which, on grounds of public policy, will not permit a person to recover when his own negligence has proximately contributed to the injury, will not permit the party who has inflicted the injury in violation of such new duty to defend upon the ground of such negligence."

We do not understand the Sloman Case, 195 S. W. 323, to hold that a defendant can remove from a personal injury case the question of negligence and supersede it with the question of discovered peril by undertaking to prove that regardless of defendant's negligence, after the dangerous situation is discovered, all reasonable care is used to avert the injury. What the Sloman Case declares with reference to the subject is this: That appellant was not entitled to a peremptory instruction to find for it on the ground that the proof failed to show its negligence proximately caused the injury, for the reason, assigned in the opinion, that the issue of discovered peril was in the case and liability might be grounded upon it in the absence of defendant's original negligence. As the majority of this court analyzes that case, the court there, in effect, said that, conceding there was no proof of original negligence, yet a peremptory instruction to find for the defendant would have been wrong, because the question of discovered peril had supervened, and this issue the plaintiff had a right to submit to the jury

independent of the question of original negligence, and that, accordingly, negligence vel non in a sense became immaterial in determining appellant's right to a peremptory instruction, because liability on the ground of discovered peril remained an issue for the jury, although original negligence was established by no proof at all. Such an interpretation conforms the meaning of the opinion to the generally accepted meaning of the doctrine of discovered peril, and no other interpretation does.

The doctrine of discovered peril permits a plaintiff to contend that, although the negligence of the defendant did not put the injured party in the place of danger, but he himself did this, still the defendant is liable for the injuries he suffered because defendant failed to use reasonable care to avoid inflicting them after discovering the danger. It does not, however, allow a defendant to say that, notwithstanding his own negligence, he will excuse himself from liability for it by showing that he made reasonable efforts to avert injuries after discovering the dangerous situation exclusively caused by his negligence. The defendant in this case, by its fourth assignment of error, seeks to avoid liability by the use of the doctrine in this very fashion. By this assignment it says, in effect, that although the proof might be sufficient to show the negligence of its engineer in failing to ring the bell and blow the whistle, yet, if subsequent to this negligence, and after appellee had turned to cross the track, the engineer exercised "proper care" to prevent the injury, there would be no liability.

For the reason above indicated, the assignment cannot be sustained.