Other applicable authorities are cited in the Griffin Case, In M., K. & T. Ry. Co. v. State, 100 Tex. 424, 100 S. W. 767, Judge Brown, speaking for our Supreme Court, said:

"A penal statute, such as now before us, must be couched in such explicit terms that the party upon whom it is to operate may with reasonable certainty ascertain what the statute requires to be done, and when it may be done; otherwise there would be no opportunity for a person charged with the duty to protect himself by the performance of it according to the law. Suth. Stats. Const. § 324; Potter's Dwaris, 246-251."

The question recurs: How can one operating a motorcar know or determine that that part of the highway on which he is is thickly built up? Without some judicial or legislative definition, construction, or interpretation of the expression "thickly built up," it is clear that such operator cannot know or answer to himself the question. If this court should attempt to say that by such expression is meant territory where houses are within so many feet or yards of each other, or that one rule should apply in a village, town, or the resident portion of a city, where there are so many houses to the block or square, and that a certain rule should obtain in the country where houses are located at such and such distances apart, we would thus be usurping legislative functions, which we are forbidden to do and must decline to do. There are many authorities cited by the cases above mentioned, and; a discussion of these would not seem to us to make plainer the failure of the statute under consideration to comply with the rule contained in article 6, supra, nor with the general requirement that a law must be written in such intelligible terms as to apprise every citizen of the nature and character of an act thus made penal with sufficient certainty to enable him to avoid the doing of it. Ex parte Leslie, 87 Tex. Cr. R. 476, 223 S. W. 227; United States v. Capital Traction Co., 34 App. D. C. 592, 19 Ann. Cas. 68; Russell v. State, 88 Tex. Cr. R. 512, 228 S. W. 566; Sutherland Statutory Construction, § 322; Cook v. State, 26 Ind. App. 278, 59 N. E. 489.

Believing the law obnoxious to the rules mentioned, we are constrained to hold that relator's contention is sound, and it is ordered that he be discharged.

---

**HINES, Director General, v. FOREMAN et ux.[*]**
(Nos. 312-3543.)

(Commission of Appeals of Texas, Section B.
June 14, 1922.)

**1. Statutes ⬤⟾64(2)—Statute concerning use of mufflers on automobiles held valid though uncertain as to part.**

Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), providing that motor vehicles must be equipped with mufflers, and that devices known as muffler cut-outs shall not be used within the limits of any incorporated city or town or any public highway where the territory contiguous thereto is closely built up, in view of section 42 (Vernon's Ann. Civ. St. Supp. 1918, art. 7012½s), providing that if any section, subsection, or clause of the act is held unconstitutional, the decision shall not affect the validity of any of the remaining portions of the act, is not unconstitutional as to prohibiting the use of muffler cut-outs in incorporated cities or towns because of the uncertainty of the statute as to where the use of such devices is prohibited on public highways.

**2. Negligence ⬤⟾56(3) — Violation of statute, actionable if proximate cause of injury.**

Although the violation of statute is negligence per se, in order to be actionable, it must be the proximate cause of an injury, and the

⬤⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Rehearing denied October 4, 1922.

rules governing proximate cause apply alike to the violation of a statute and to common-law negligence.

**3. Railroads ⬥⟹352—Finding of failure to use muffler on automobile held finding of contributory negligence.**

In action for damages resulting from a collision between a train and an automobile, a finding that the running of the automobile without a muffler, contrary to Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), caused or contributed to cause the injury, necessarily includes a finding that it was a proximate cause of the injury, and, being a violation of the statute, is a finding of negligence per s..

**4. Railroads ⬥⟹324(3)—Motor vehicle law requiring mufflers intended to prevent collisions at crossings.**

Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), requiring motor vehicles to use mufflers and prohibiting the use of muffler cut-outs in any incorporated city or town, was intended not only to prevent a nuisance, but also to prevent collisions at railroad crossings.

**5. Municipal corporations ⬥⟹703(2) — Statute construed to prohibit use of motor without "muffler."**

Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), providing that every motor vehicle shall have devices which shall be at all times in constant operation to prevent excessive or unusual noises, and prohibiting the use in incorporated cities or towns of devices known as muffler cut-outs, in effect prohibits the use of an automobile without a "muffler," which means any of various devices to deaden the noise of escaping gases or vapors, such as a tube filled with obstructions, through which the 'exhaust gases of an internal combustion engine, as an automobile, are passed (called also a silencer), or an attachment usually consisting of a series of perforated baffles for a locomotive pop safety valve.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Muffler.]

**6. Trial ⬥⟹352(5)—Interrogatory as to whether operation of automobile without muffler caused accident held not to assume fact.**

In an action by an automobile owner against a railroad for damages sustained in a collision in which a muffler on an automobile was not being used at the time of the collision as required by Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), submitting the question to the jury whether the operation of the automobile without a muffler caused or contributed to cause the accident, in view of testimony by plaintiff that the automobile was being run with the cut-out open, was not misleading as assuming that the car was being run.

**7. Statutes ⬥⟹279—Not necessary to plead public statute.**

In an action by an automobile owner for damages in a collision with a train, defended on the ground that at the time of collision the automobile was being run without a muffler as required by Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), an objection based on failure to plead the statute is unavailing, since it is a public statute of which all are legally charged with knowledge.

**8. Railroads ⬥⟹324(3)—Prohibition of automobile driver's use of "cut-out" absolute regardless of noise.**

In an action for damages resulting from a collision at a crossing, defended on the ground that the muffler was not used on plaintiff's automobile as required by Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), lack of evidence of unusual or excessive noise does not render a finding that failure to use the muffler contributed to cause collision insufficient to defeat recovery, since the prohibition of the use of the "cut-out" is absolute, regardless of the quantum of noise.

**9. Railroads ⬥⟹352—Findings on issue of contributory negligence of automobile driver held inconsistent, preventing judgment. ·**

In an action for damages resulting from a collision at a crossing, defended on the ground of plaintiff's failure to use the muffler on his automobile, as required by Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), findings that he exercised due care in approaching the crossing, and that the failure to use the muffler contributed to the injury, are inconsistent, and do not warrant a judgment for either party.

**10. Trial ⬥⟹350(6, 7)—Submitting special issues on primary negligence of defendant and contributory negligence of plaintiff where issue of discovered peril was raised held not error.**

In an action by a motor owner against a railroad for damages in a collision, defended on the ground of contributory negligence in failing to use a muffler as required by Acts 1917, c. 207, § 12 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), in which the evidence raised the issue of discovery of peril by the employees of the railroad, submitting special issues on primary negligence and contributory negligence was not error.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Action by J. M. Foreman and wife against Walker D. Hines, Director General. From a judgment affirming judgment for plaintiff (229 S. W. 630), defendant brings error. Reversed and remanded.

Stanford & Sanders, of Canton, and Johnson, Edwards & Hughes, of Tyler, for plaintiff in error.

R. S. Shapard, of Dallas, and Wynne & Wynne, of Wills Point, for defendants in error.

McCLENDON, P. J. This suit was brought by J. M. Foreman (who will be referred to as plaintiff) and wife against the Director General of Railroads, Walker D. Hines, to recover compensatory damages resulting from a

---

⬥⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

collision between an automobile driven by plaintiff and one of defendant's trains at a public crossing in the town of Wills Point, Tex., on July 16, 1918, in which accident plaintiff's son, Earl Foreman, was killed, plaintiff J. M. Foreman sustained personal injuries, and the automobile was demolished. By a divided court the Court of Civil Appeals affirmed a judgment of the trial court in favor of plaintiff rendered upon a special issue verdict. 229 S. W. 630.

The leading controversy presented is whether the judgment can be permitted to stand in view of a finding by the jury to the effect that the operation of the automobile in an incorporated town without a muffler in violation of section 12 of chapter 207 of the General Laws of 1917 (Vernon's Ann. Pen. Code Supp. 1918, art. 820g), regulating operation of motor vehicles, caused or contributed to cause the accident.

The collision took place about 4 o'clock in the afternoon. There is little dispute about the physical conditions surrounding the accident. The crossing in question was west of the passenger depot at Wills Point, at which the train, which was a local passenger, and was about on time, was scheduled to stop. From the crossing east the track was straight for a distance of half a mile or more. There was a slight grade for 228 feet, and from that point for about 800 feet the grade was slightly downward. The difference in grade between the highest and lowest points for over 1,000 feet east of the crossing was slightly under 8 feet. Beginning at the crossing and proceeding east was a slight cut which attained its greatest depth at 429 feet where it was 4.9 feet from the top of the rails to the top of the dump. From the top of the rails to the height of the engine cab was about 13 feet, the coaches about 12 feet, and the smoke stack about 15 feet. The right of way east of the crossing was unfenced and about 200 feet wide, the track being in the center. On either side of the right of way and abutting upon it was a public street. The crossing roadway in question connected those two streets, but did not extend beyond either; each street extending both east and west from the crossing roadway. There were no obstructions between the north street or crossing road and the track east of the crossing other than the cut and grades mentioned. About 400 feet east of the crossing was a road extending north from the north street and at right angles to it. The train was bound west and traveling at an estimated speed of from 20 to 25 miles an hour. Plaintiff and his son traveled south over the road last mentioned, turned to the right or west into the street north of the right of way, and proceeded upon that street until they reached the crossing road, into which they turned south to cross the track. As the automobile reached the center of the

243 S.W.—31

track the collision occurred. The automobile was knocked some 20 or more feet west of the crossing and south of the track. Plaintiff's son jumped from the machine about the time of the collision and received injuries from which he died in a very few minutes. There were no other passengers in the car. This car had been purchased by plaintiff a few months previous. It was, as testified to by plaintiff, a secondhand four-cylinder Overland with a right-hand drive and a very heavy car. Plaintiff was driving and was on the right and his son on the left side of the front seat of the car. Plaintiff testified that as he turned into the crossing road he looked east along the track, but neither saw nor heard the train until it was practically upon him. The engineer, who was on the right or north side of the engine, testified that he saw plaintiff's automobile as it drove into the north street proceeding west, and presumed he would continue on that street until he saw him turn into the crossing road, at which time the engine was about 150 feet from the crossing, that he immediately blew the whistle and put on the brakes, but that it was impossible to stop the train before reaching the crossing. The witnesses who testified upon the point all agreed that when the train stopped the rear end of the rear coach had just cleared the crossing.

The jury found that the statutory signals of blowing the whistle and ringing the bell were not given; that the engineer did not exercise ordinary care to avoid injuring plaintiff and his son while approaching the crossing, and that each of these derelictions was a proximate cause of the accident; that plaintiff and his son did "exercise such ordinary care as would be used by an ordinarily prudent person under the circumstances in this case to avoid injury and damages." In answer to special issues requested by defendant the jury found that "the running and operation of the automobile by plaintiff J. M. Foreman and his son, Earl Foreman, without a muffler caused or contributed to cause the injury of J. M. Foreman and the death of Earl Foreman and the destruction of the automobile"; that when plaintiff and his son came into the public road running east and west facing the railroad track the train was not in plain view, nor was it in plain view when the car turned to cross the track; and that a person of ordinary prudence intending to cross the track at that point would have looked to the east to ascertain whether the train was approaching on the track that might endanger him in making the crossing.

Section 12 of chapter 207 of the act of 1917 reads as follows:

"Every motor vehicle must have devices in good working order which shall be at all times in constant operation to prevent excessive or unusual noises, annoying smoke and the escape

of gas, steam or oil as well as the falling out of residue from fuel, and all exhaust pipes carrying exhaust gas from the engine shall be directly parallel to the ground or slightly upward. Devices known as 'muffler cut-out' shall not be used within the limits of any incorporated city or town or on any public highway where the territory contiguous thereto is closely built up." Vernon's Ann. Pen. Code Supp. 1918, art. 820g.

The only testimony upon this issue was that given by plaintiff himself upon cross-examination as follows:

"Yes; my car made a good deal of noise in running. As a general thing I drove it with the muffler open. Yes; I had a muffler. I imagine I was running with the muffler open; I cannot say positively, because I never thought of anything like this; it is my opinion that the muffler was open, as that is better .on a car; I practically run the car all the time with the muffler wide open, and my best recollection is that on this occasion it was wide open. * * * The sound of .my car driven with the muffler open would naturally lessen my chances of hearing other noises. I had never thought about that."

The record does not show any objection to this testimony.

The contention of defendant is that driving the car with the muffler open within an incorporated town was a violation of this statute, and therefore negligence per se, and that the jury having found that this act on plaintiff's part caused or contributed to the accident, it follows necessarily that plaintiff was guilty of contributory negligence as a matter of law, and therefore the judgment was contrary to the verdict.

There are a number of contentions urged by plaintiffs why the verdict should be upheld, regardless of this jury finding, which we will consider later.

[1] The section above quoted is part of an act requiring the licensing of motor vehicles and prescribing various rules and regulations for their operation upon public highways. Section 42 of the act provides:

"If any section, subsection or clause of this act is for any reason held to be unconstitutional, such decision shall not affect the validity of any of the remaining portions of this act." Vernon's Ann. Civ. St. Supp. 1918, art. 7012½s.

The act as originally passed provided penalties for violation of certain of its provisions, but in several instances no penalty was prescribed. By an amendment passed at the first called session of the same Legislature a violation of certain other provisions, including that in question, was made a misdemeanor; and by a further amendment passed at the third called session of that Legislature the remaining provisions were penalized. The constitutionality of the act has .been brought in question in several cases decided by the Court of Criminal Appeals.

In Mosier v. State, 234 S. W. 225, the act was held not violative of article 3, § 35, the Constitution, inhibiting bills other than general appropriation bills from containing more than one subject. In that case a judgment of conviction under section 18 of the act (Vernon's Ann. Pen. Code Supp. 1918, art. 820m), convicting a driver of the offense of failing to stop and render necessary assistance to a person struck by his automobile was affirmed. In Griffin v. State, 86 Tex. Cr. R. 498, 218 S. W. 494, the 1919 amendment providing a penalty for violating section 9 of the act, relating to glaring headlights, was held void on account of indefiniteness of the statute. Vernon's Ann. Pen. Code Supp. 1922, art. 820d. To the same effect is Snider v. State, 89 Tex. Cr. R. 192, 230 S. W. 146, holding void the penal provisions relating to section 16a (Vernon's Ann. Pen. Code Supp. 1918, art. 820k), which deals with careless driving. In Ex parte Slaughter (Tex. Cr. App.) 243 S. W. 478 decided May 31, 1922, not yet [officially] reported, that portion of section 20 which penalizes driving at a greater rate of speed than 18 miles an hour "on any public highway where the territory contiguous thereto is closely built up" was held void for the same reason. It is to be observed that the language of the section in question inhibits the use of a muffler cut-out upon any public highway "where the territory contiguous thereto is closely built up," this language being the same as that used in that portion of section 20 (Vernon's Ann. Pen. Code Supp. 1918, art. 820o) held void as to its penal provisions in the case last cited. We have no doubt but that the Court of Criminal Appeals will hold void the penal provisions relating to that portion of section 12 which inhibits the use of muffler cut-outs on public highways where the contiguous territory is closely built up. It is to be observed that section 12 as originally passed had no penal provision attached, and if the amendment creating such penalty be held void it would leave the section as it stood before the amendment was passed. It may be questioned whether the provision inhibiting muffler cut-outs on public roads where the adjacent territory is closely built up is void for uncertainty as a regulation for the government of those using motor vehicles upon public highways. See State v. Shippers' Co., 95 Tex. 603, 69 S. W. 58. That question, however, is not material to our present inquiry, since the statute itself provides that the unconstitutionality of a part of the law shall not render the other parts invalid. The pleadings of the plaintiff alleged that the crossing where the accident occurred was not only in a closely built up community, but was within the territorial limits of an incorporated town. The statute is perfectly definite and certain in prohibiting the use of such cut-outs within the limits of incorpo-

rated towns or cities, and their use within such limits is made a plain violation of the statute.

There have been several decisions by the Courts of Civil Appeals in which questions relating to this statute have been discussed, but none of these decisions in any way bear upon any controversy in the present case. Railway v. Johnson (Tex. Civ. App.) 224 S. W. 277; Traction Co. v. Stone (Tex. Civ. App.) 230 S. W. 754; Hines v. Richardson (Tex. Civ. App.) 232 S. W. 889.

[2, 3] The first question of importance raised by plaintiffs is embodied in the contention that the finding of the jury upon the use of the muffler cut-out is insufficient to defeat plaintiff's right of recovery because there was no finding that such act was a proximate cause or a proximate contributing cause of the accident. The specific finding is that the running of the car without a muffler "caused or contributed to cause the injury." It is now well settled that, although the violation of a statute is negligence per se, in order to be actionably so, such negligence must be the proximate cause of the injury complained of, and that the rules governing proximate cause apply alike to the violation of a statute and to common-law negligence or the failure to use ordinary care. Waterman Lumber Co. v. Beatty, 110 Tex. 227, 218 S. W. 363; Railway v. Behne (Tex. Com. App.) 231 S. W. 354; Railway v. Harrington (Tex. Com. App.) 235 S. W. 188. In the abstract, therefore, this contention of plaintiffs is correct. We have reached the conclusion, however, that as applied to the facts in the present case this contention cannot be sustained. The province of the jury is to determine the controlling facts upon which there is a controversy in the evidence. If under the facts of a case the violation of a statute might reasonably be a cause of the accident, but not necessarily a proximate cause thereof, then a jury finding to the effect only that it was a cause, in the absence of a finding that it was a proximate cause, would be wanting in an essential element as a finding of contributory negligence. We are unable to conceive, however, of any theory upon which the jury could find that the failure to use the muffler could cause or contribute to the injury in the present case without doing so proximately. The only possible way in which such failure could contribute to any degree in causing the injury was in preventing the occupants of the car from hearing, and therefore from discovering, the approach of the train in time to avoid the collision. It is plain from plaintiff's testimony that he neither saw nor heard the train until the car was upon the crossing, when it was too late for him to avoid the accident. The conclusion is irresistible that, if plaintiff had discovered the train in time to have stopped his car, he would have done so and the accident would not have happened. Speculation upon this question would be useless. Furthermore, the finding itself eliminates any question which might arise in this regard. If plaintiff would not have stopped his car even if he had heard the train in time to have done so, then his failure to hear it was a wholly immaterial matter and could not have been in any sense a contributing cause to the injury. It seems clear to us that the finding that the failure to use the muffler caused or contributed to the injury necessarily includes a finding under the peculiar facts of this case that it was a proximate contributing cause, and being a violation of a positive statute upon the subject, and therefore negligence per se, contributory negligence of the plaintiff would follow as a matter of law from this jury finding.

[4] It is further urged that the purpose of section 12 was not to prevent collisions at crossings or otherwise, but merely to protect those living within incorporated cities and near closely built up highways from the nuisance of unnecessary and annoying noises; that the accident in question was not within the purview of the statute, and therefore its violation could not be successfully urged to defeat recovery upon the ground of contributory negligence as a matter of law. It may well be that the primary purpose of this provision of the statute was to prevent annoyance to those living within the proscribed territory caused by the noise of motor vehicles operated without a muffler; but we are not prepared to say that the statute was not also intended to prevent any other untoward consequences which might in the ordinary and natural course of events flow from its violation. The article in question, although not expressly so stating, would constitute the use of a muffler cut-out within the corporate limits of a town a public nuisance. We think that all consequences which might ordinarily and naturally be expected to flow from the use of such a device would be within the contemplation of the statute, whatever may be its primary object. A number of undesirable results might flow from the use of such device in addition to the annoyance to the senses which the noise would create. It seems to us that the use of such device, the necessary consequences of which would be to greatly minimize, if not entirely destroy, the sense of hearing of those occupying the car, would have for its natural and probable effect the producing of accidents and consequent injury. The statute does not define the purposes of this particular provision, but makes the use of the cut-out under the circumstances an absolutely prohibited act, leaving no discretion to the user. A holding that it was designed only to prevent annoyance to those living in the inhibited territory would necessarily have to be based upon mere speculation as to the

legislative intent—resort to which would, we believe, be unwarranted.

[5] The contention is also made that the jury finding based upon running the car "without a muffler" cannot be construed as a finding of negligence per se, since the statute does not eo nomine inhibit the use of motor vehicles without mufflers. The statute provides that—

"Every motor vehicle must have devices in good working order which shall be at all times in constant operation to prevent excessive or unusual noises."

It then inhibits the use in incorporated towns of "devices known as 'muffler cut-out.' "

Webster's International Dictionary defines "muffler" as:

"Any of various devices to deaden the noise of escaping gases or vapors, as a tube filled with obstructions, through which the exhaust gases of an internal combustion engine, as an automobile, are passed (called also a silencer), or an attachment usually consisting of a series of perforated baffles for a locomotive pop safety valve."

[6] There was no contention that the first part of the statute had been violated. The testimony of plaintiff quoted above clearly shows that the car was equipped with a muffler. Defendant pleaded that the car was being carelessly and negligently operated in that it was being run "with the muffler open and at such a rate of speed as to prevent them (plaintiff and his son) from hearing, seeing, or observing the train approaching the crossing." The issue submitted to the jury was not whether the car was being operated without a muffler, but whether its operation without a muffler caused or contributed to cause the accident. The charge assumed that the car was being run "without a muffler." The testimony of plaintiff was that it was being operated with the "cut-out" open. There was no exception to the pleading, no objection to the testimony, and no objection to the special issue or the form in which it was submitted. Special issues must be construed in the light of the pleadings and evidence in the case. When so construed, we think there can be no question but that the expressions "using muffler cut-out" as found in the statute, "muffler open," as used in defendant's answer and in plaintiff's testimony, and "without a muffler," as used in the special issue, were all employed as synonymous terms. The fair and reasonable deduction from the statute and testimony is that the "cut-out" is a device by which the muffler as a sound deadener or "silencer" is rendered inoperative, eliminated, or "cut out." In electricity a "cut-out" is "a device for cutting out a circuit or a portion of a circuit, generally including a fuse designed to melt when the current exceeds a certain strength; a circuit breaker." Webster. The statute assumes that the "muffler cut-out" is a well-known device, and, under the circumstances of this case, absolutely inhibits its use. Plaintiff's testimony indicates that he possessed a familiar knowledge of this device. And, if his counsel were not enlightened upon the subject, they failed to make that fact known. If they thought the jury needed further light or instruction, it was their privilege and duty to have this done at the proper time. We do not believe any one was misled by the manner in which this issue was submitted to the jury.

If the court committed error in assuming as a fact that the car was being operated without a muffler, the special issue should have been objected to on that ground.

[7] The objection that the statute was not pleaded is unavailing. It is a public statute of which all are legally charged with knowledge.

[8] The further objection is made that the finding was insufficient because there was no evidence of unusual or excessive noise which the statute was designed to prevent. The statute does not make its inhibition to use the "cut-out" depend upon whether the noise thereby produced is unusual or excessive. Its prohibition under the circumstances is made absolute, regardless of the quantum of noise.

[9] The finding of the jury in question in our opinion is inconsistent with a judgment in favor of plaintiff. But we would not be warranted, we believe, in recommending rendering judgment for defendant, since the jury found generally that plaintiff and his son exercised due care in approaching the crossing. This finding and the finding with regard to the use of the muffler cut-out, in our opinion, are inconsistent and do not warrant a judgment in favor of either party. One of these findings, we think, destroys the other, and each is inconsistent with and would destroy a judgment in accordance with the other. It is our view, therefore, that the cause should be remanded for a new trial.

[10] It is urged by defendant that the trial court committed error in submitting the special issues on primary negligence and contributory negligence, because the evidence raised the issue of discovered peril. It was upon this contention that the Court of Civil Appeals was divided in its holding. Defendant's contention in this regard is that, where the evidence raises the issue of discovered peril, the issues of primary negligence and contributory negligence become immaterial, and the sole question then is whether plaintiff can recover upon the issue of discovered peril. We have no doubt of the correctness of the holding of the majority of the Court of Civil Appeals upon this issue to the effect that mere raising of the issue of discovered peril does not eliminate from the case the

issue of primary negligence on the part of defendant in creating the perilous situation. It is true that. where the defendant discovers the perilous situation of the plaintiff in time to avoid injury by the exercise of ordinary care in the use of all means at hand, having due regard to the safety of others, a new duty arises to exercise such care, and failure to do so creates liability, regardless of the original cause of plaintiff's perilous situation. But it is not true that the defendant can relieve itself from liability for its negligence proximately producing a perilous situation and consequent injury by showing that it discovered such perilous situation in time to avoid it by the exercise of ordinary care, but at the same time did not avert the injury. Discovery of the peril in time to avert the injury by the use of ordinary care would necessarily create liability unless the injury were averted. A finding that ordinary care was used after discovery of the peril necessarily precludes a finding that the peril was discovered in time to avoid injury by the exercise of ordinary care unless the injury were in fact avoided. There was no error in submitting these issues because there was no theory upon which defendant could be relieved of the consequences of .its primary negligence, if any, in creating plaintiff's perilous situation which would defeat plaintiff's cause of action. The failure of defendant to exercise ordinary care to avert the accident after discovering plaintiff's perilous situation would render immaterial defendant's primary negligence as a proximate cause of the injury on account of the new situation and new duty which arose upon discovering the peril. But, in order to remove the primary negligence of plaintiff as a proximate cause of the injury on the ground of discovered peril, it must necessarily appear that there was liability on the discovered peril theory; otherwise the new duty would be negatived. Primary negligence was, therefore, an issue in the case unless the evidence were such as to warrant a peremptory instruction for plaintiff on the issue of discovered peril—a theory which the evidence will not support, and which, if admitted by defendant, would establish liability against him.

The majority of the Court of Civil Appeals, in addition to this holding, held that the evidence did not raise the issue of discovered peril. Since we recommend that the case be remanded for a new trial, we refrain from any expression of opinion in this regard.

We conclude that the judgments of the district court and Court of Civil Appeals should be reversed, and the cause remanded to the former for a new trial.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.